UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEYSTONE MANAGEMENT GROUP,
LLC d/b/a CLOUDSTAR,

   Plaintiff

v.

   Case No.:

DOMA HOLDINGS, INC. f/k/a
STATES TITLE HOLDING, INC.

   Defendant.
_____/

## COMPLAINT

Plaintiff, Keystone Management Group, LLC d/b/a Cloudstar ("Cloudstar"), sues Defendant, Doma Holdings, Inc. f/k/a States Title Holding, Inc. ("States Title")[1], and alleges as follows:

### Parties, Jurisdiction, and Venue

1.    This is a claim for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2.    Cloudstar is a Florida limited liability company with two members. One the members is domiciled in Florida and the other member is domiciled in New Jersey. Thus, for purposes of diversity jurisdiction, Cloudstar is a citizen of Florida and New Jersey.

---

[1] States Title Holding, Inc. changed its name to Doma Holdings, Inc. in March 2021.

1

3. States Title is a Delaware corporation with its principal place of business in California. For purposes of diversity jurisdiction, States Title is a citizen of Delaware and California.

4. Pursuant to the agreement at issue in this case, States Title consented to jurisdiction in this state and agreed that the laws of this state would govern any dispute arising therefrom. Further, States Title breached a contract in this state by engaging in conduct prohibited by the Agreement (defined below in ¶ 13). Thus, this Court has specific personal jurisdiction over States Title pursuant to section 48.193(1)(a), Florida Statutes.

5. In addition, States Title, either on its own or through its agents, affiliates, and employees, engages in substantial and not isolated activity in Florida and carries on various business ventures in this state. This also provides a basis for jurisdiction pursuant to Florida Statutes section 48.193(1)(a) as well as section 48.193(2).

6. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

7. Venue is proper in this District pursuant to the contract at issue in this case. Further, venue is proper as States Title resides in this District as defined in section 28 U.S.C. § 1391(b).

## General Allegations

I.     **Cloudstar's Business**

8. Cloudstar provides a suite of information technology services including virtual desktop hosting, hosted software and applications, custom tailored IT infrastructure design, email encryption, managed services, IT security, consulting services, and more. Cloudstar's clientele range from small businesses to large publicly traded corporations, and spans across multiple industries.

9. Cloudstar's portfolio of ResWare services is one of the company's more profitable offerings. ResWare is a comprehensive and customizable automated software application primarily designed for the title and escrow industry. Resware users often seek consulting services to assist with the implementation, customization, and ongoing use of the software within their companies. These services include but are not limited to the customization of ResWare workflows, integrations, reporting and ongoing end user training and support.

10. Likely due to Resware's comprehensive nature and vast capabilities, the pool of individuals with sufficient knowledge and training to be Resware consultants is limited. As such, Cloudstar's hiring process for a Resware consultant is time consuming and difficult.

11. One of Cloudstar's most knowledgeable and proficient Resware consultants was William Keating ("Mr. Keating"). Cloudstar hired Mr. Keating in March 2020 as a Senior Resware Administrator after an exhaustive search.

12. Mr. Keating's prior knowledge and experience with Resware allowed him to have an immediate impact on Cloudstar's business, which continued throughout his time with the company. During his tenure, Mr. Keating serviced fifteen

different clients and was responsible for a substantial sum of revenue for the ResWare consulting department. He developed significant relationships with Cloudstar clients and was integral to Cloudstar's Resware consulting business. Mr. Keating's Resware expertise also helped spawn additional business for Cloudstar's other services from Resware consulting clients. Keating's contributions to Cloudstar continued up until States Title improperly solicited him and employed him.

## II. The Agreement between Cloudstar and States Title

13. States Title and Cloudstar entered a Master Services Agreement dated February 6, 2019 (the "Agreement"), pursuant to which Cloudstar provided cloud hosting services to States Title. A true, complete and authentic copy of the Agreement is attached as Exhibit A.

14. The Agreement was effective as of May 2018 and continued through July 31, 2020. This period of time is the "Term," as defined in the Agreement.

15. To prevent Cloudstar's clients—such as States Title—from hiring its employees, the Agreement included a non-solicitation provision. Section 31(k) of the Agreement provides:

> Non-solicitation. Unless otherwise approved in writing, during the Term and for one (1) year thereafter, Customer shall not hire any person who is or was an employee or subcontractor of Cloudstar during the Term, provided, however, that this provision shall not apply to general advertising solicitations or similar efforts not targeted towards current or former Cloudstar employees or sub contractors.

See Agreement, ¶ 31(k).

16. This non-solicitation provision enables Cloudstar to protect its business and its investment in its employees. Cloudstar spends substantial time hiring, training, and developing skilled, well-qualified employees. Those employees work closely and develop significant relationships with Cloudstar's existing and prospective customers. To ensure its clients continue to do business with Cloudstar rather than poach its talent, Cloudstar relies upon this non-solicitation provision.

17. Cloudstar and States Title performed under the Agreement without issue for the vast majority of the Term. In fact, it was not until after the Agreement was terminated that Cloudstar learned of States Title's flagrant misconduct.

### III.    The solicitation and hiring of William Keating

18. On June 30, 2020, States Title provided notice to Cloudstar of its intent to terminate the Agreement.

19. That same day—presumably as a ruse to garner insight into the particulars of Cloudstar's Resware business—States Title feigned interest in Cloudstar's Resware consulting services.

20. Hopeful to retain a valued client, Cloudstar immediately arranged for a conference call with States Title to discuss the Resware consulting services it could provide. Following their call, Cloudstar emailed States Title with its pricing information for Resware consulting. Mr. Keating was copied on the email.

21. Within weeks after this phone conference and email, States Title began soliciting Mr. Keating.

22. States Title first reached out to Mr. Keating in July 2020. But those initial solicitation attempts were ignored.

23. States Title persisted in its recruitment of Mr. Keating by contacting him again on multiple occasion before it received a response.

24. States Title continued its pursuit of Mr. Keating until it finally convinced him to leave Cloudstar for a similar Resware-based position with States Title.

25. On December 31, 2020, Mr. Keating notified Cloudstar that he was resigning, that his last day would be January 15, 2021, and that he had accepted a position at States Title.

26. Immediately upon being notified of the situation, counsel for Cloudstar sent a demand letter to States Title advising States Title of its restrictions and obligations under the Agreement. Cloudstar demanded that States Title cease any solicitation of Cloudstar's employees. A true, complete and authentic copy of the Demand Letter is attached as Exhibit B.

27. States Title ignored Cloudstar's demand letter. At this point, States Title knew that hiring Mr. Keating would breach its Agreement, but it apparently didn't care. States Title proceeded with its intentional, willful, and egregious breach of the Agreement and hired Mr. Keating.

### IV.   The fallout

28. Mr. Keating's departure left Cloudstar in a bind. Due to the scarcity of candidates qualified to be Resware consultants, it would take months to identify, hire, and train an adequate replacement.

29. In the interim, Cloudstar incurred substantial costs and was forced to re-deploy extensive time and resources to fulfill the duties and obligations to Cloudstar's clients that were previously borne by Keating.

30. With limited options at its disposal, Cloudstar was forced to hire subcontractors at exorbitant rates to service some of its Resware consulting customers that were previously serviced by Keating.

31. Beyond the costs to replace Keating, Cloudstar has suffered and continues to suffer harm to its reputation in the industry.

32. Cloudstar's clients heavily rely upon Resware and, as a result, certain problems with the software have the potential to cause massive losses to those clients. Efficient and effective customer service is paramount to Cloudstar's reputation among current and prospective clients.

33. Since Keating's departure, Cloudstar has received reports of customer concerns over Cloudstar's ability to provide adequate ongoing Resware consulting services. Cloudstar has seen an increase in complaints and customer service problems directly tied to issues that were previously addressed by Mr. Keating. These types of concerns and issues have already undermined Cloudstar's standing in the industry and have the potential to be catastrophic to Cloudstar's Resware consulting business.

34. All conditions precedent to the bringing and maintenance of this lawsuit and the granting of the relief requested have been performed, have occurred, or have been waived.

35. Cloudstar has retained undersigned counsel to represent it in this matter and is obligated to pay its attorneys a reasonable fee for their services rendered.

## COUNT I
### Breach of Contract

36. Cloudstar reallages and incorporates paragraphs 1 through 35.

37. The Agreement is a valid, binding contract between Cloudstar and States Title.

38. States Title breached the Agreement by soliciting and hiring Mr. Keating in violation of the Agreement's non-solicitation provision.

39. As a direct and proximate result of State's Title's breach of the Agreement, Cloudstar has suffered, and continues to suffer, damages.

WHEREFORE, Plaintiff, Keystone Management Group, LLC d/b/a Cloudstar, requests a judgment against Doma Holdings, Inc. f/k/a States Title Holding, Inc. for damages, attorneys' fees, interest, costs, and such further relief as the Court deems just and proper.

### Demand for Jury Trial

Cloudstar demands a jury trial on all claims to which it is so entitled as a matter of law.

*/s/ Kenneth G. Turkel*
Kenneth G. Turkel – FBN 867233
E-mail: kturkel@bajocuva.com
Trial Counsel
David A. Hayes – FBN 96657
E-mail: dhayes@bajocuva.com

8

BAJO | CUVA | COHEN | TURKEL P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 443-2199
Fax: (813) 443-2193
*Attorneys for Plaintiff*